**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In re:

    KIRK D. SCHEIB,                                      Case No. 10-05942-JDG

    Debtor.                                               Hon. James D. Gregg
_____/

FIRST AMERICAN TITLE INSURANCE COMPANY,

    Plaintiff,

-vs-                                                         Adversary Proceeding No.

KIRK D. SCHEIB,

    Defendant.
_____/

**COMPLAINT FOR NONDISCHARGEABILITY OF DEBT**

    Plaintiff, First American Title Insurance Company ("First American Title"), by its attorneys, Taubman, Nadis & Neuman, P.C., for its complaint against Kirk D. Scheib, states to this Honorable Court as follows:

    1.    Defendant, Kirk D. Scheib ("Scheib"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on May 7, 2010, in Case No. 10-05942-jdg.

    2.    This matter is a core proceeding pursuant to 28 USC §157(2)(I), and venue is proper in this court.

**COMMON ALLEGATIONS**

    3.    In approximately May, 2004, Scheib, claiming to be the sole member of Lincoln Title Agency, LLC, a Michigan limited liability company, approached representatives of First American Title and sought to become an approved title agent for First American Title.

4. Upon information and belief, Scheib changed the name of Lincoln Title Agency, LLC to Patriot Title Agency, LLC ("Patriot Title").

5. Among other things, Scheib, on behalf of Patriot Title, submitted to First American Title:

    a. An Application for Appointment of Agency (the "Agency Application") that, among other things, described Patriot Title as a limited liability company whose sole member was Scheib. A copy of the Agency Application is attached hereto as **Exhibit A**;

    b. An Organizational Plan (the "Plan") that, among other things, described the management of Patriot Title as Scheib and Jennifer Kojs ("Kojs") and stated that "The capital needed to start business is being received by a family member that wishes to invest in the company." A copy of the Plan is attached hereto as **Exhibit B**.

6. First American Title approved the Agency Application, and on or about September 10, 2004, First American Title and Patriot Title entered into a Policy Issuing Agency Contract (the "Contract") whereby, among other things, First American Title appointed Patriot Title as its agent for transacting title insurance business and issuing policies of title insurance underwritten by First American Title. A copy of the Contract is attached hereto as **Exhibit C**.

7. Pursuant to the Contract, Patriot Title was obligated to, among other things:

    a. Charge customers title insurance premiums ("Premiums") determined by First American Title's rate schedules. See, Exhibit C, ¶5

    b. Mail to First American Title on or before the 15th day of each month, a report of all title insurance policies and endorsements issued during the preceding

calendar month, along with the remission of that portion of the Premiums to which First American Title is entitled pursuant to the Contract. See, Exhibit C, ¶6

  c. Maintain a policy register (the "Register") to record all Jackets furnished by First American Title and an accurate record of the disposition of such Jackets, and make such Register available at all times for inspection and audit by representatives of First American Title. See, Exhibit C, ¶7

8. From September, 2004 to February, 2008, Patriot Title conducted business, including, without limitation, the issuance of title commitments and title policies underwritten by First American Title.

9. On or about January 30, 2007, Scheib submitted to First American Title a Certification As To Ownership Changes (the "Certification") in which Scheib stated, among other things, that he was the sole member of Patriot Title and that there had been no changes to ownership, key personnel or officers of Patriot Title since September, 2004. A copy of the Certification is attached hereto as **Exhibit D**.

10. Scheib was the sole title examiner for Patriot Title during the course of its existence.

11. In the course of his work as a title examiner for Patriot Title, Scheib issued one or more title commitments that were inaccurate and/or failed to state necessary requirements in order for a policy of title insurance to be issued.

TAUBMAN, NADIS & NEUMAN, P.C., 3255 NORTHWESTERN HWY., STE. 200, FARMINGTON HILLS, MI 48334 TEL: (248) 865-3700 FAX: (248) 865-3003

12. In approximately January, 2008, First American Title began receiving complaints from customers of Patriot Title that documents to be recorded in connection with closing transactions conducted by Patriot Title were in fact not being recorded.

13. On or about January 17, 2008, a representative of First American Title contacted Kojs to arrange for an underwriting audit, as permitted under the Contract, and Kojs agreed to make the title files and escrow files of Patriot Title available for audit on February 28, 2008.

14. On February 28, 2008, a representative of First American Title appeared at the offices of Patriot Title in order to conduct the audit, and found that the door was locked. Looking through the glass door of the office, it appeared that the furniture had been removed from the visible area, and a phone and answering machine were sitting on the floor.

15. Despite repeated attempts thereafter to determine the status of Patriot Title and the whereabouts of Patriot Title's Register, title files and escrow files, Scheib failed to explain what happened to the business records of Patriot Title.

16. First American Title did not receive any reports of policies and endorsements or remittances of Premiums from Patriot Title for several months prior to February 28, 2008.

17. During the course of First American Title's investigation into the activities of Patriot Title, First American Title learned that Randy Saylor ("Saylor") conducted numerous real estate closings through Patriot Title.

18. On or about March 10, 2008, First American Title filed suit in Oakland County Circuit Court, Case No. 08-089968-PD (the "State Court Action") against Patriot Title, Saylor, Scheib and Kojs, seeking, among other things, access to the books and records of Patriot Title, and claiming, among other things, that Scheib had failed to remit Premiums to First American

TAUBMAN, NADIS & NEUMAN, P.C., 32255 NORTHWESTERN HWY., STE. 200, FARMINGTON HILLS, MI 48334 TEL: (248) 865-3700 FAX: (248) 865-3003

Title, that Saylor in fact held an undisclosed ownership interest in Patrot Title, and that Scheib had perpetrated a fraud upon First American Title by failing to disclose the nature and extent of Saylor's involvement in Patriot Title.

19. During the course of the State Court Action, First American Title learned that Saylor actually controlled all of the business affairs of Patriot Title throughout the course of its existence, and utilized Patriot Title to perpetrate fraud on numerous insured lenders.

20. On or about February 6, 2009, First American Title obtained a Consent Judgment (the "Consent Judgment") against Scheib in the amount of $125,000.00. A copy of the Consent Judgment is attached hereto as **Exhibit E**.

### COUNT ONE - NONDISCHARGEABILITY OF DEBT PURSUANT TO BANKRUPTCY CODE §523(a)(4)

21. First American Title hereby incorporates the allegations of Paragraphs 1 through 20 in this Count of the Complaint as if fully stated herein.

22. Scheib, as a principal of Patriot Title, owed a fiduciary duty to First American Title to disclose that Saylor owned and/or controlled Patriot Title, and to disclose the true nature of Patriot Title's operations.

23. Scheib explicitly represented to First American Title that he was the sole member of Patriot Title, that he and Kojs were the sole employees of Patriot Title, that the funds to capitalize Patriot Title were coming from a family member, and that there had been no changes to the ownership, key personnel or officers of Patriot Title (the "Representations").

24. The Representations were false.

25. The Representations were material in connection with Patriot Title's request to become an agent of First American Title.

5

26. At the time Scheib made the Representations, he knew them to be false, or Scheib made the Representations with gross recklessness as to their truth.

27. Scheib made the Representations with the intention of deceiving First American Title.

28. First American Title relied upon the Representations in entering into the Agency Agreement and permitting Patriot Title to remain as a title agent of First American Title.

29. As a proximate result of First American Title's reliance upon the Representations, First American Title suffered damages.

30. Scheib, as the sole title examiner and sole authorized signatory of title commitments and title policies, owed a fiduciary duty to First American Title to properly prepare title commitments and title policies underwritten by First American Title.

31. On or after June 22, 2007, Scheib issued a title commitment (Commitment Number 07-01598-PTA)(the "Long Lake Commitment") with Washington Mutual Bank ("Washington Mutual") as the proposed insured for a loan policy in the principal amount of $1,121,250.00 with respect to a mortgage for the property at 1580 W. Long Lake Rd., Bloomfield Hills, Michigan (the "Long Lake Property"). A copy of the Long Lake Commitment is attached hereto as **Exhibit F**.

32. At the time Scheib issued the Long Lake Commitment, there were four mortgages encumbering the Long Lake Property, and a gap in the chain of title.

33. Scheib failed to disclose the gap in title or the existence of two of the four mortgages encumbering the Long Lake Property.

34. Scheib failed to include a requirement on the Long Lake Commitment that the undisclosed mortgages be discharged, and failed to include a requirement to obtain a deed sufficient to close the gap in title.

35. In reliance on the Long Lake Commitment, Washington Mutual issued a mortgage loan to Pamela Tucker for $975,000.00.

36. When Washington Mutual later learned of the undischarged mortgages, it tendered a title claim (the "Long Lake Claim") to First American Title.

37. On or about September 22, 2009, First American Title paid the sum of $425,000 to JPMorgan Chase Bank, as successor in interest to Washington Mutual, to satisfy the Long Lake Claim.

38. On or after August 25, 2006, Scheib issued a title commitment (Commitment Number 06-01515-PTA)(the "Rockaway Commitment") with Novastar Mortgage, Inc. ("Novastar") as the proposed insured for a loan policy in the principal amount of $880,000.00 with respect to a mortgage for the property at 932 Rockaway Court, Bloomfield Hills, Michigan (the "Rockaway Property"). A copy of the Rockaway Commitment is attached hereto as **Exhibit G**.

39. At the time Scheib issued the Rockaway Commitment, there were four mortgages encumbering the Rockaway Property.

40. Scheib failed to disclose the existence of two of the four mortgages encumbering the Rockaway Property.

41. Scheib failed to include a requirement on the Rockaway Commitment that the undisclosed mortgages be discharged.

42. In reliance on the Rockaway Commitment, Novastar issued a mortgage loan to Ha Truong for $880,000.00. Novastar subsequently assigned its interest to Deutsche Bank National Trust Company, as Trustee under NovaStar Mortgage Funding Trust, Series 2006-5 ("Deutsche Bank").

43. When Deutsche Bank later learned of the undischarged mortgages, it tendered a title claim (the "Rockaway Claim") to First American Title.

44. On or about February 24, 2009, First American Title paid the sum of $600,000 to Saxon Mortgage, as servicer for Deutsche Bank, to satisfy the Rockaway Claim.

45. Scheib, as a designated signatory on the Contract, was personally responsible for assuring that Patriot Title reported and tendered the Premiums to First American Title.

46. Scheib owed a fiduciary duty to First American Title arising out of the agency relationship between First American Title and Patriot Title to, among other things, properly report and timely pay the unpaid Premiums.

47. Scheib has a statutory duty to remit unpaid Premiums pursuant to the Michigan Insurance Code, MCLA §500.100 et seq., including, but not limited to, MCLA §500.1207(1), which states "[a]n agent shall be a fiduciary for all money received or held by the agent in his or her capacity as an agent. Failure by the agent in a timely manner to turn over the money which he or she holds in a fiduciary capacity to the persons to whom they are owed is prima facie evidence of violation of the agent's fiduciary responsibility."

48. Scheib breached his fiduciary and statutory duties to First American Title by, among other things, failing to remit the unpaid Premiums to First American Title.

TAUBMAN, NADIS & NEUMAN, P.C., 32255 NORTHWESTERN HWY., STE. 200, FARMINGTON HILLS, MI 48334  TEL: (248) 865-3700  FAX: (248) 865-3003

49. As a proximate result of Scheib's breach of his fiduciary and statutory duties, First American Title suffered damages.

50. The Consent Judgment arises out of Scheib's fraud or defalcation while acting in a fiduciary capacity, as more specifically set forth herein.

51. Pursuant to Bankruptcy Code §523(a)(4), the debt owing from Scheib to First American Title pursuant to the Consent Judgment is not discharged under Bankruptcy Code §727.

WHEREFORE, First American Title respectfully requests this Honorable Court to grant the following relief:

A. The entry of an Order determining that the Consent Judgment in favor of First American Title against Scheib shall not be discharged by the operation of Bankruptcy Code §727.

B. An award of costs so wrongfully incurred, including a reasonable attorney fee;

C. Such other or further relief as this Court deems appropriate under the circumstances.

                                      Respectfully submitted,

                                      **TAUBMAN, NADIS & NEUMAN, P.C.**

By: /s/ Phillip J. Neuman
      PHILLIP J. NEUMAN (P35499)
      Attorneys for First American Title
      32255 Northwestern Hwy., Ste. 200
      Farmington Hills, MI 48334
      (248) 865-3700

Dated: June 16, 2010

M:\1ST AMER\PATRIOT TITLE\PLEADINGS - 08-0241-01\SCHEIB BANKRUPTCY\Complaint for Nondischargeability.wpd